UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

**CRIMINAL ACTION NO. 25-16-DLB-EBA**

**UNITED STATES OF AMERICA**　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**v.**　　　　　　　　**MEMORANDUM ORDER**
　　　　　　　**ADOPTING REPORT AND RECOMMENDATION**

**JUSTIN BRYANT**　　　　　　　　　　　　　　　　　　　　　　　　　**DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

**I.　　INTRODUCTION**

This matter is before the Court upon the July 25, 2025 Report and Recommendation ("R&R") of Magistrate Judge Edward B. Atkins (Doc. # 26) wherein he recommends that the Court deny Defendant Justin Bryant's Motion to Suppress (Doc. # 20). Defendant having filed Objections (Doc. # 32)[1] and the United States having filed its Response (Doc. # 34), the R&R is ripe for the Court's consideration. For the following reasons, Defendant's Objections are **overruled**, the R&R is **adopted** as the Opinion of the Court, and the Motion to Suppress is **denied**.

---

[1]　　Defendant's objections were originally due on August 27, 2025. (*See* Docs. # 29 and 30). After Defendant failed to file any objections by that deadline, the Court issued an Order adopting the R&R as the Opinion of the Court and denying Defendant's Motion to Suppress. (Doc. # 31). On August 28, 2025, Defendant filed his Objections (Doc. # 32) together with a Motion for a Brief Extension of Time to File Objections (Doc. # 33). In the Motion for Extension, Defendant's counsel submits that a paralegal at his firm had a family emergency which prevented her from timely filing the Objections and requests a one-day extension to file them. (Doc. # 33). Based on Defendant's submissions, the Court concludes that he is entitled to his requested extension. Accordingly, the Motion for Extension (Doc. # 33) is **granted**. The Court will address Defendant's Objections herein.

1

## II.     FACTUAL BACKGROUND

On March 1, 2025, Kentucky State Police troopers were conducting a traffic checkpoint in Floyd County, Kentucky when they "observed a dark-colored Dodge pickup truck coming up the road towards the checkpoint." (Doc. # 26 at 1). Shortly thereafter, the truck "stopped in the middle of the road about 100 yards short of the checkpoint, reversed in the wrong lane of traffic for roughly 20-30 feet, and pulled into a restaurant parking lot." (*Id.*). During an evidentiary hearing held in this matter, Trooper Matt Smith testified that, based on his training and experience, he knew that the truck had committed several traffic violations. (*Id.*). Trooper Smith then alerted Trooper Billy Ball about the situation who then "promptly left the checkpoint, entered his police cruiser, and pursued the pickup truck." (*Id.* at 1-2).

After locating the truck in the restaurant parking lot, Trooper Ball approached the stopped vehicle based on the traffic violations Trooper Smith had observed. (*Id.* at 2). After Trooper Ball approached the vehicle, the driver—who was later identified as Defendant—rolled down the vehicle's window. (*Id.*). Trooper Ball then observed a plastic bag which he believed to contain a large amount of methamphetamine sitting in Defendant's lap. (*Id.*). After Trooper Ball attempted to reach into the vehicle to seize the methamphetamine, "a struggle ensued, and [Defendant] began to fling the drugs throughout the truck and at Trooper Ball." (*Id.*). Trooper Ball was eventually able to subdue and arrest Defendant. (*Id.*). On March 27, 2025, a federal grand jury returned an Indictment charging Defendant with four drug trafficking and firearm offenses. (Doc. # 1).

2

On June 25, 2025, Defendant filed the instant Motion to Suppress. (Doc. # 20). Defendant moves for the suppression of any evidence obtained as a result of his traffic stop. (*Id.*). In support, Defendant submits that the "traffic stop was conducted without probable cause or reasonable suspicion, as required by the Fourth Amendment . . . and relevant Kentucky law, thereby rendering the stop unlawful." (*Id.* at 1). More specifically, Defendant argues that the traffic checkpoint was not conducted in compliance with applicable caselaw, rendering all subsequently seized evidence "fruit of the poisonous tree." (*Id.* at 1-4).

On July 21, 2025, Magistrate Judge Edward B. Atkins held an evidentiary hearing on the Motion to Suppress. (Doc. # 23). Following the evidentiary hearing, Judge Atkins promptly issued his R&R recommending that Defendant's Motion to Suppress be denied. (Doc. # 26). Since then, Defendant filed his Objections (Doc. # 32), the United States filed its Response (Doc. # 34), and the R&R is now ripe for this Court's review.

## III.   REPORT AND RECOMMENDATION

After summarizing the relevant factual background, Judge Atkins addressed Defendant's arguments as follows. First, Judge Atkins noted Defendant's argument that the traffic checkpoint was "unconstitutional because Trooper Ball's decision to pull him over was discretionary and done 'without any reference to any systematic plan or supervisory oversight[.]'" (Doc. # 26 at 2). More specifically, Defendant argued that the checkpoint was "merely a ruse to look for drugs, which the Sixth Circuit has found to be unconstitutional." (*Id.*). But as Judge Atkins noted, the uncontroverted testimony of Trooper Smith showed that Defendant "never actually reached the traffic safety checkpoint, so its constitutionality is not dispositive of the legality of the search and

3

seizure of [Defendant] and his vehicle." (*Id.* at 2-3) (citing *Mich. Dep't of State Police v. Sitz*, 495 U.S. 444, 450 (1990)). Accordingly, Judge Atkins determined that Defendant's Motion to Suppress "turn[ed] on whether [Defendant could] demonstrate that Trooper Ball lacked probable cause to pull him over," which Defendant could not do. (*Id.* at 3).

In addressing the issue of probable cause, Judge Atkins first noted that the Fourth Amendment provides, in pertinent part, that the "right of [the] people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." (*Id.* (quoting US. Const. amend. IV)). Judge Atkins further noted that officers "may stop a vehicle if they have probable cause to believe the driver violated a traffic law." (*Id.* (quoting *United States v. Morgan*, 71 F.4th 540, 543 (6th Cir. 2023)). Here, Judge Atkins determined that the officers had probable cause to believe that Defendant committed a traffic violation—specifically, improper turning in violation of Ky. Rev. Stat. § 189.330. (*Id.*). Accordingly, Judge Atkins concluded that the traffic stop was supported by probable cause and was therefore constitutional. (*Id.*).

Judge Atkins then addressed whether Trooper Ball legally seized the methamphetamine from Defendant's vehicle. As Judge Atkins noted, although warrantless seizures of evidence are presumptively unconstitutional, they may be lawful under the plain view doctrine. (*Id.* at 3 (quoting *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013)). For this doctrine to apply, "(1) the item seized must be in plain view, (2) the item's incriminating character must be immediately apparent, (3) the officer must lawfully be in the place where the item can be plainly seen, and (4) the officer must have a lawful right of access to the item." (*Id.* (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

4

As to the first and second elements, Judge Atkins noted that the methamphetamine was in plain view and that Trooper Ball's uncontroverted testimony showed that the criminal nature of the drugs was immediately apparent to him based on his training and experience. (*Id.* at 4). As to the third element, Judge Atkins observed that Trooper Ball was lawfully in the place where the methamphetamine could be seen as he had legally seized Defendant's vehicle. (*Id.*). And regarding the fourth element, Judge Atkins determined that Officer Ball "had a lawful right of access to the methamphetamine in [Defendant's] lap because his observation gave him probable cause to believe that evidence of a crime would be found in [Defendant's] vehicle." (*Id.*). Accordingly, Judge Atkins determined that the plain view doctrine applied to the seizure of the methamphetamine. (*Id.*).

For these reasons, Judge Atkins recommended that Defendant's Motion to Suppress should be denied. (Doc. # 26 at 2-4).

IV. ANALYSIS

A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Criminal Procedure 59(b)(1)(2), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3); *see also* 28

U.S.C. § 636(b)(1)(C).  Failure to object is considered waiver of the party's right to review. Fed. R. Crim. P. 59(b)(2).

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (footnote omitted).  Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object."  *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001).  "Moreover, 'an "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.'"  *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).

**B.     Defendant's Objections**

Defendant has filed his Objections to the R&R raising what the undersigned construes as three separate arguments.  (Doc. # 32).  First, Defendant argues that certain alleged "discrepanc[ies]" with the testimony offered at the evidently hearing "raises significant doubts about the factual basis for the [traffic] stop and suggests that the decision to single out . . . Defendant was based on speculative assumptions rather than objective, verifiable observations."  (*Id.* at 3-4).  Second, Defendant argues that he merely "enter[ed] a restaurant parking lot during normal business hours," and claims that this "legitimate and routine action . . . does not inherently provide grounds for suspicion or justify law enforcement intervention."  (*Id.* at 5).  Third, Defendant challenges Judge

6

Atkins' determination that because Defendant never actually reached the traffic checkpoint, he was not stopped pursuant to it. (*Id.* at 6). Each of these arguments lack merit.

Defendant first claims that certain "discrepanc[ies]" with the testimony offered at the evidentiary hearing cast doubt on "the factual basis" for the traffic stop. (*Id.* at 3-4). Defendant specifically points to Trooper Ball's testimony that he did not personally observe Defendant performing the driving maneuvers that led up to the traffic stop and Trooper Smith's testimony that he did not "ascertain the point of origin of . . . Defendant's vehicle prior to the stop[.]" (*Id.* at 3). According to Defendant, this testimony was "contradicted" by Trooper Ball when he testified that he believed Defendant's vehicle had just exited the same parking lot on which the traffic stop occurred before approaching the checkpoint. (*Id.* at 4). Although Defendant is less than clear on this issue, he appears to argue that these alleged discrepancies warrant disregarding the officers' testimony for lack of credibility.

Here, Judge Atkins found the officers' testimony to be credible. (*See* Doc. # 26). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Robinson*, No. 1:07-CR-1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007). Here, Defendant has not provided any legitimate reason for the Court to doubt the officers' credibility. Even if Trooper Ball was mistaken about whether Trooper Smith had observed the vehicle's "point of origin," Trooper Smith's uncontroverted testimony as to the driving maneuvers that led up to the traffic stop sufficiently explained and justified it. Indeed,

7

Trooper Ball testified that Defendant committed several traffic violations as he approached and evaded the traffic checkpoint including: (i) failure to operate a vehicle in a careful manner in violation of Ky. Rev. Stat. § 189.290, (ii) improper stopping of a vehicle on a roadway in violation of Ky. Rev. Stat. § 189.450(1), and (iii) improper turning in violation of Ky. Rev. Stat. § 189.330.  And in light of this uncontroverted testimony, the Court declines to reevaluate Judge Atkins' determination as to the factual basis for the traffic stop or the officers' credibility.  Accordingly, Defendant's first objection lacks merit and is **rejected**.

Defendant next argues that that he merely "enter[ed] a restaurant parking lot during normal business hours," and claims that this "legitimate and routine action . . . does not inherently provide grounds for suspicion or justify law enforcement intervention." (Doc. # 32 at 4).  But Defendant's description of the events leading to the traffic stop stands in stark contrast to the testimony offered at the evidentiary hearing.  As noted above, Trooper Smith testified that as Defendant approached the traffic stop, he stopped in the middle of the road short of the checkpoint, reversed in the wrong lane of traffic for approximately 20-30 feet, and pulled into a restaurant parking lot.  (*See* Doc. # 26 at 1). And apart from merely asserting his description of the events, Defendant has provided no evidence in support of it.  Accordingly, Defendant's second objection lacks merit and is **rejected**.

Defendant finally challenges Judge Atkins' determination that because Defendant never reached the traffic checkpoint, he was not stopped pursuant to it. (Doc. # 32 at 6). According to Defendant, the traffic stop "was a direct consequence of the traffic checkpoint" and the "checkpoint's connection to the stop is [therefore] critical[.]"  (*Id.*).

8

This argument is unavailing. As an initial matter, Defendant provides no legal support for his position which the United States points out in its Response. (Doc. # 34 at 5). Moreover, it is undisputed that Defendant never actually reached the traffic checkpoint and was instead stopped while parked in a restaurant parking lot. As Judge Atkins pointed out, a Fourth Amendment seizure "occurs when a vehicle is stopped at a checkpoint." (Doc. # 26 at 2-3 (quoting *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 450 (1990)). Thus, based on the circumstances and in the absence of authority to the contrary, the Court concludes that Defendant was not stopped pursuant to the checkpoint.[2] Accordingly, Defendant's third and final objection lacks merit and is **denied**.

## V.   CONCLUSION

For the reasons stated herein, Defendant has failed to raise any meritorious legal objections to Judge Atkins' Report and Recommendation. Accordingly,

**IT IS ORDERED** as follows:

(1)   Defendant's Motion for a Brief Extension of Time to File Objections (Doc. # 33) is **GRANTED**;

(2)   Defendant's Objections (Doc. # 32) to the R&R are **ACCEPTED as timely**;

(3)   The Magistrate Judge's R&R (Doc. # 26) is **ADOPTED as the Opinion of the Court**;

(4)   Defendant Objections (Doc. # 32) to the R&R are **OVERRULED**;

(5)   Defendant Motion to Suppress (Doc. # 20) is **DENIED**; and

---

[2]   Having determined that Defendant was not stopped pursuant to the traffic checkpoint, the Court need not—and will not—address Defendant's challenge to the checkpoint's constitutionality. (*See* Doc. # 32 at 2).

(6) This matter is scheduled for a **Scheduling Conference** on **Thursday September 25, 2025 at 10:00 a.m. in Covington**.

This 16th day of September, 2025.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\PikeCrim\2025\25-16 Order Adopting R&R 2.docx